# RUNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

WILLIAM T. WILBURN,                )
                                   )
      Petitioner,             )
                                   )
      v.                       )          No. 4:20-CV-1442 RLW
                                   )
DORIS FALKENRATH,[1]               )
                                   )
      Respondent.             )

## MEMORANDUM AND ORDER

This matter is before the Court on Petitioner William T. Wilburn's First Amended Application and Motion for Writ of Habeas Corpus by a Person in State Custody (ECF No. 6), filed by retained counsel. Petitioner is incarcerated at the Jefferson City Correctional Center ("JCCC"). For the following reasons, the Court will deny habeas relief.

### Procedural History

On September 25, 2014, a jury in St. Charles County, Missouri found Wilburn guilty of statutory rape committed against a person under age fourteen, three counts of statutory sodomy committed against a person under age fourteen, and distributing a controlled substance to a minor. On November 21, 2014, Wilburn was sentenced as a prior and persistent offender to concurrent life sentences on each of the sex crimes, and a concurrent fifteen-year sentence for distribution of a controlled substance to a minor.

Wilburn filed a timely notice of appeal. The Missouri Court of Appeals affirmed Wilburn's convictions on June 28, 2016. State v. Wilburn, 500 S.W.3d 849 (Mo. Ct. App. 2016) (per curiam).

---

[1]Doris Falkenrath is the current Warden at Jefferson City Correctional Center. Under Rule 2(a) of the Rules Governing Section 2254 cases in the United States District Courts "the petition must name as respondent the state officer who has custody." Therefore, Doris Falkenrath will be substituted as the named Respondent in this action pursuant to Rule 25(d), Federal Rules of Civil Procedure.

The Missouri Supreme Court denied Wilburn's motion for transfer on November 1, 2016. The Court of Appeals issued its mandate on November 4, 2016.

Wilburn filed a pro se application for post-conviction relief under Missouri Supreme Court Rule 29.15 on January 26, 2017. Appointed counsel filed a timely amended post-conviction motion for Wilburn on April 18, 2018. The post-conviction motion court held an evidentiary hearing on January 9, 2018. The post-conviction court denied Wilburn's amended 29.15 motion on March 2, 2018. Wilburn appealed the denial and the Missouri Court of Appeals affirmed on September 10, 2019. Wilburn v. State, 591 S.W.3d 10 (Mo. Ct. App. 2019) (per curiam). The Missouri Court of Appeals issued its mandate on January 6, 2020.

Wilburn filed the § 2254 petition in this Court on October 6, 2020, and the amended petition on November 23, 2020, and it appears to be timely filed pursuant to 28 U.S.C. § 2244(d)(1)(A). Respondent opposes the relief sought. Wilburn did not file a reply in support of his amended petition.

### Grounds Raised

The amended petition raises twenty-one grounds for relief.

### Factual Background

The Missouri Court of Appeals described the facts of Petitioner's criminal case in the post-conviction appeal memorandum:

> Defendant does not challenge the sufficiency of the evidence to support his convictions. Viewed in the light most favorable to the jury's verdict, *State v. Taylor*, 298 S.W.3d 482, 491 (Mo. banc 2009), the facts of the case are as follows: Defendant met D.F. ("Victim"), then a 13-year-old girl, on a chat-line called Livelinks. Defendant falsely told Victim that his name was "Adam." Victim told Defendant she was fourteen although she was actually thirteen. After exchanging numerous text messages and cell phone calls over several days, Defendant agreed to meet Victim at midnight on May 25, 2013 in the alley behind Victim's home. Victim sneaked out the back door of her home and entered Defendant's green two-door truck as agreed.

Defendant drove Victim to his apartment in St. Charles. While in the truck, Defendant had Victim perform oral sex on him. Defendant also performed oral sex on Victim. Afterwards, Defendant took Victim to the bedroom in his apartment. Defendant asked Victim whether she knew what Ecstasy was like and she said no. Defendant returned with a sandwich bag which contained "white sand-like rocks." Defendant put water in the bag, crushed the "rocks," and filled a syringe with the mixture. Defendant then injected Victim with the mixture in her arm. Victim began feeling "really dizzy" and saw "a whole bunch of blue or purple polka dots everywhere." Defendant again put his penis in Victim's mouth and put his mouth on Victim's vagina. Defendant then inserted his penis into Victim's vagina. After injecting himself and Victim a second time with the drug mixture, Defendant again had sexual intercourse with Victim.

Afterwards, Defendant had Victim shower and helped clean her up with a rag. Defendant drove Victim home. However, before dropping Victim off, Defendant attempted to delete his phone number from Victim's cell phone. Victim retrieved the phone before Defendant could delete his number. Victim exited the vehicle and returned home between 2:00 - 3:00 a.m. in the morning.

Later that day, Victim told Mother's boyfriend about the incident with Defendant. Victim's Mother and Mother's boyfriend immediately took Victim to St. Louis Children's Hospital. The hospital found "amphetamine, methamphetamine" in Victim's system and flushed the drugs out. Victim also told the police what had happened. Victim described Defendant's apartment complex as white and either red or burgundy. Victim also "describe[d] in detail Defendant's bedroom, how it was laid out, where the bed was, where the windows were, where the dresser was, how his shoes were laid out in the closet, . . . where the closet was," and "the layout of the apartment from [the entrance] [to] the bedroom." Victim also reported that Defendant said his name was Adam. Victim described Defendant's vehicle as a small, two-door, green pick-up truck and gave police Defendant's phone number from her cell phone.

Police ultimately traced the phone number to Defendant. Police discovered that Defendant purchased a "throw-away" cell phone. He had the phone number activated on May 19, 2013 and deactivated on May 26, 2013. Defendant then had a new number activated on the same phone on May 26. Further investigation revealed that Defendant's apartment was in St. Charles County and was "red or burgundy[,] and white" as Victim had described. A "small, green, two-door pick-up truck" was parked on the side of the building and its license plate was registered to Defendant.

The Defendant's apartment "matched exactly as [Victim] had described." Inside, the "layout of the apartment was exactly as [Victim] had described." Defendant's bedroom was also "exactly as [Victim] had described it." Victim was "spot on" as to the locations of the windows in the apartment and in the bedroom.

In Defendant's bedroom, police found and seized loose syringes and the cell phone used to contact Victim. Call logs from Defendant's cell phone established

that multiple calls were made from the phone to Victim's cell phone on May 20, May 21, and May 25. The text message logs also established that hundreds of text messages were exchanged between Defendant and Victim. The last call from Defendant's phone to Victim's phone was six minutes to midnight on May 25, just prior to picking up Victim in the alley.

Victim "immediately" identified Defendant from a photo lineup shown by police. Defendant was subsequently arrested. Defendant waived his Miranda rights and gave a recorded interview. He admitted using methamphetamines intravenously in the past. Defendant also admitted using chat-lines in the past but made it "very clear" that he had "not dealt with anyone under the age of 18." Defendant stated he had not used chat-lines since January 2013.

Victim also consistently outlined the details of the incident to her Mother, Mother's boyfriend, the forensic interviewer, and the social worker. At trial, the witnesses all corroborated Victim's testimony.

(Resp. Ex. G, ECF No. 9-7 at 2-5).

## Legal Standard

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999).  Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Williams-Bey v. Trickey, 894 F.2d 314, 317 (8th Cir. 1990) (citing 2254(a)).

To obtain federal habeas review of a claim raised in a § 2254 petition, the petitioner must have first raised the federal constitutional dimensions of the claim in State court in accordance with State procedural rules.  Duncan v. Henry, 513 U.S. 364 (1995) (per curiam); Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009) (quoted case omitted).  In Missouri, "a claim must be presented 'at each step of the judicial process' in order to avoid procedural default." Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (quoting Benson v. State, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). If the petitioner failed to properly present the claim in State court, and no adequate non-futile remedy is currently available by which he may bring the claim in that forum, the claim is deemed procedurally defaulted and cannot be reviewed by the federal habeas court "unless the

[petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 566 U.S. 1, 10-11 (2012).

Where the State court adjudicated a claim on the merits, federal habeas relief can be granted on the claim only if the State court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). See Williams v. Taylor, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time the petitioner's State conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. Id. at 380-83.

"A state court decision is 'contrary to' clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court confronts facts that are materially indistinguishable from relevant Supreme Court precedent yet reaches the opposite result." Zornes v. Bolin, 37 F.4th 1411, 1414 (8th Cir. 2022) (quoting Williams, 529 U.S. at 405-06). "A decision involves an 'unreasonable application of' federal law if the state court 'correctly identifies the governing legal standard but either unreasonably applies it to the facts of the particular case or unreasonably extends or refuses to extend the legal standard to a new context.'" Id. at 1414-15 (quoting Munt v. Grandlienard, 829 F.3d 610, 614 (8th Cir. 2016)). "To demonstrate an unreasonable application, a prisoner must show 'that a state court's adjudication was not only wrong, but also objectively unreasonable, such that "fairminded jurists" could not disagree about the proper resolution.'" Id. at 1415 (quoting Smith v. Titus, 958 F.3d 687, 691 (8th Cir. 2020)). Federal habeas courts "evaluate the reasonableness

of the state court's ultimate conclusion, not necessarily the reasoning used to justify the decision." Id. (citing Dansby v. Hobbs, 766 F.3d 809, 830 (8th Cir. 2014)).

Finally, when reviewing whether a state court decision involves an "unreasonable determination of the facts" in light of the evidence presented in the state court proceedings, state court findings of basic, primary, or historical facts are presumed correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Rice v. Collins, 546 U.S. 333, 338-39 (2006); Collier v. Norris, 485 F.3d 415, 423 (8th Cir. 2007). Erroneous findings of fact do not automatically require the grant of habeas relief, however. Instead, the determination of these facts must be unreasonable in light of the evidence of record. Collier, 485 F.3d at 423; Weaver v. Bowersox, 241 F.3d 1024, 1030 (8th Cir. 2001).

Federal courts are "bound by the AEDPA to exercise only limited and deferential review of underlying State court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). "To obtain habeas relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 569 U.S. 351, 358 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). This standard is "difficult to meet." Id. "The writ of habeas corpus is an 'extraordinary remedy' that guards only against 'extreme malfunctions in the state criminal justice systems.'" Shinn v. Ramirez, 142 S. Ct. 1718, 1731 (2022) (quoting Harrington, 562 U.S. at 102).

**Evidentiary Hearing**

A district court may dismiss a habeas petitioner's motion without an evidentiary hearing if "(1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130,

1132 (8th Cir. 2006) (internal quotation marks omitted) (quoting Sanders v. United States, 341

F.3d 720, 722 (8th Cir. 2003)). Wilburn does not request an evidentiary hearing. Because the Court

determines that Wilburn's claims do not warrant habeas relief on their face, it will deny the

Amended Petition without an evidentiary hearing.

**Discussion**

A. Ground One

In Ground One, Wilburn asserts trial court error in admitting evidence that he had

pornography in his bedroom with provocative titles:

> The trial court abused its discretion in admitting evidence that Mr. Wilburn
> had in his bedroom pornography with titles such as "Almost Virgin Sluts," "White
> Teens in Da Hood," and "Amateur XXX," because this evidence was presented at
> trial in violation of Mr. Wilburn's rights to due process, a fair jury and his right to
> be tried only for the crime with which he was charged—rights guaranteed by the
> Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. This
> evidence of prior uncharged misconduct was more prejudicial than probative
> because many people find pornography greatly offensive, and the evidence
> showing that Mr. Wilburn possessed this pornography inappropriately colored the
> way the jurors viewed the rest of the evidence in the case. This mistake by the trial
> court was especially prejudicial and ill-considered, because despite the provocative
> names, the videos contained only sexual conduct involving consenting adults not
> underage children.

(ECF No. 9 at 19-20).

The Missouri Court of Appeals concluded the pornography evidence was improperly

admitted, and stated that "[t]his usage is exactly against the general ban on propensity evidence."

(ECF No. 9-7 at 9.) The court concluded that erroneous admission of the evidence did not warrant

reversal, however, because there was an insufficient showing of prejudice in light of the

"overwhelming" evidence of guilt presented at trial:

> "[A] conviction will not be reversed due to admission of improper evidence
> unless the defendant has proven that prejudice resulted by showing there is a
> reasonable probability that in the absence of such evidence the verdict would have
> been different." State v. Adams, 443 S.W.3d 50, 56 (Mo. App. E.D. 2014) (citation
> omitted). "Defendant bears the burden of showing that the trial court abused its
> discretion and that he was prejudiced as a result." Id. (citation omitted).

Here, we find the prejudicial effect, if any, was minimal in light of the overwhelming evidence of Defendant's guilt presented at trial. Victim testified she first met Defendant on a chatline. Phone records established that Defendant used the Livelinks chat-line to talk to Victim near the time of the crimes. Phone records also established that Defendant and Victim exchanged numerous phone calls and text messages during the week preceding the crimes. The last call from Defendant's phone to Victim's phone was six minutes to midnight on May 25, just prior to picking Victim up in the alley. Victim described to police Defendant's truck, Defendant's apartment complex, the layout of the apartment, and the layout of Defendant's bedroom in great detail. Police later found Victim's description to be completely accurate. Victim had amphetamine and methamphetamine in her system when tested at hospital, consistent with her statement that Defendant injected her with drugs. Police found loose syringes in Defendant's apartment and Defendant admitted using methamphetamine intravenously in the past.

Victim also consistently told Mother's boyfriend, the nurse at the hospital, the police, and the forensic interviewer that Defendant inserted his penis into her vagina, injected her with drugs, had her perform oral sex on him, and he performed oral sex on her. Further, Defendant's behavior exhibited consciousness of guilt. Defendant activated a "throw-away" cell phone that was difficult to trace when contacting Victim. Defendant deactivated the phone number of the throw-away cell phone the day after the crime. Defendant attempted to delete his number from Victim's phone, though unsuccessful. When questioned by police, Defendant denied using chat-lines after January of 2013. However, this was contradicted by his text messages in May of 2013 and his cell phone record.

In light of the foregoing evidence and reasonable inferences therefrom, we find overwhelming evidence supported Defendant's conviction and there is no reasonable probability that the verdict would have been different in the absence of the evidence of the titles of the videos.

(ECF No. 9-7 at 10-11.)

"Generally, in the habeas context, '[q]uestions regarding admissibility of evidence are matters of state law." Sittner v. Bowersox, 969 F.3d 846, 849-50 (8th Cir. 2020) (quoting Rousan v. Roper, 436 F.3d 951, 958 (8th Cir. 2006)). "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." Id. (quoting Bucklew v. Luebbers, 436 F.3d 1010, 1018 (8th Cir. 2006)). Accordingly, to succeed on an evidentiary claim, a state petitioner "must show 'that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial

fundamentally unfair.'" Id. at 850 (quoting Rousan, 436 F.3d at 958-59); see also Anderson v. Goeke, 44 F.3d 675, 679 (8th Cir. 1995)).

Here, Wilburn has not established a due process violation based on admission of the evidence. See Anderson, 44 F.3d at 679 (for a due process violation to occur from an evidentiary ruling, the ruling must have been wrong and Petitioner must show that "absent the alleged impropriety the verdict probably would have been different."). The Missouri Court of Appeals' decision is not contrary to, nor is it an unreasonable application of, clearly established law as determined by United States Supreme Court, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379. As such, the decision is entitled to deference.

Ground One is denied.

B. Grounds Two, Three, and Four

In these grounds, Wilburn alleges the trial court erred in admitting text messages taken from his phone: The Court discusses these related grounds together.

GROUND TWO

The trial court abused its discretion in admitting text messages where Movant had written that he was "bi" and "kinky." The text messages did not pertain to any of the allegations against him in this case and were not between Movant and any other witness in the case. The evidence admitted in the trial should have been only such evidence that is material and relevant to the charges levelled against him. Admission of this irrelevant evidence violated his rights to due process, a fair jury and his right to only be tried for the crimes he was actually charged with committing. The evidence was uncharged misconduct that was more prejudicial than probative because it involved sexual subjects that were introduced and paraded in the courtroom only to inflame the jury and color and influence the jury's opinion about the Movant and his sexual preferences. The admission of the evidence violated the rights guaranteed to Movant by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

GROUND THREE

The trial court abused its discretion in admitting into evidence a text message where Movant had written that his idea of the perfect woman would be

one with a "dick." The text messages did not pertain to any of the allegations against him in this case and were not between him and any other witness in the case. The evidence admitted in the trial should have been only such evidence that is material and relevant to the charges levelled against him. Admission of this irrelevant evidence violated his right to due process, a fair jury, and his right to only be tried for the crimes he was actually charged with committing. The evidence was uncharged misconduct that was more prejudicial than probative because it involved a sexual subject meant only to inflame the jury and color and influence the jury's opinion about the Movant and his sexual preferences. The admission of the evidence violated the rights guaranteed to Movant by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

<u>GROUND FOUR</u>

The trial court abused its discretion in admitting into evidence a text message where Movant wrote that at some unspecified time in the past, he convinced an unidentified woman to send him $300 via Western Union. The text messages did not pertain to any of the allegations against him in this case and were not between him and any other witness in the case. The evidence admitted in the trial should have been only such evidence that is material and relevant to the charges levelled against him. Admission of this irrelevant evidence violated his rights to due process, a fair jury and his right to only be tried for the crimes he was actually charged with committing. The evidence was uncharged misconduct that was more prejudicial than probative because it had no bearing on the case other than to damage Movant in the eyes of the jury, to turn the jury against him and to portray him in a negative light. Movant had not tried to extort or secure money from the alleged victim or her family. This is evidence of the State's constant dedication to try this case based upon Movant's isolated incidents of bad behavior rather than relying on the testimony of the alleged victim and the physical evidence. The evidence was meant only to inflame the jury and color and influence the jury's opinion about the Movant and his past dealings with women. The admission of the evidence violated the rights guaranteed to Movant by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(ECF No. 6 at 20-22.)

The Missouri Court of Appeals concluded the text message evidence was admissible because it was both logically and legally relevant to prove the crimes charged:

We review a trial court's decision on the admission of evidence for abuse of discretion. *State v. Reed*, 282 S.W.3d 835, 837 (Mo. banc 2009). "This standard gives the trial court broad leeway in choosing to admit evidence[.]" *Id.* An abuse of discretion occurs where the trial court's ruling was "clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *State v. Winfrey*, 337 S.W.3d 1, 5 (Mo. banc 2011) (internal quotation marks and citation omitted). If we find such error, we reverse only where it "was so prejudicial that it deprived the defendant of a fair trial." *Id.* (internal quotation marks and

citation omitted). "Trial court error is prejudicial if there is a reasonable probability that the court's error affected the outcome of the trial." *Id.* (internal quotation marks and citation omitted).

In Points II through IV, Defendant asserts the trial court erred in admitting three text messages in Defendant's cell phone. Point II concerns Exhibit 23A, a text message stating, "Dick, my perfect woman would have one. I love groups, am open to trying most anything new. I'm clean, DF and a nice looking guy. I am a go fast guy looking to make some new friends. *Adam*." (emphasis added). Point III concerns Exhibit 23B, a text message stating, "OMG, I'm an awful person. Been talking to this chick I met off a hatline [sic]. . . . Convinced her to Western Union $300. She did. What a dope. . . ." Point IV concerns Exhibit 23C, a text message stating, "Yes, I'm an adult, 40. And no, I'm not affiliated with the police in any way. I'm bi and love kinky myself. I do party sometimes, and when I do, I crave." Defendant argues that these text messages were evidence of prior uncharged misconduct that was more prejudicial than probative. Defendant further argues that the evidence served no purpose other than to inflame the jury. We disagree.

In general, "evidence of uncharged misconduct or prior bad acts is inadmissible to show that the defendant has a propensity to commit such acts." *State v. Campbell*, 143 S.W.3d 695, 700 (Mo. App. W.D. 2004) (citation omitted). "Introduction of such evidence for that purpose alone violates the defendant's right to be tried only for the offense charged." *Id.* (citation omitted). "Such evidence is admissible, however, if it is both logically and legally relevant to prove the crime charged." *Id.* (citation omitted). "Evidence is logically relevant if it has a legitimate tendency to directly establish the defendant's guilt of the crime charged." *Id.* (citation omitted). "The evidence has a legitimate tendency to establish guilt where the tendency is based on something other than the idea that the defendant has poor character, and therefore, is likely guilty of the offense charged." *Id.* (citation omitted). "Evidence is legally relevant if its probative value outweighs its prejudicial effect." *Id.* "The balancing of the evidence's probative value against its prejudicial effect on the jury rests within the sound discretion of the trial court." *Id.* (citation omitted).

Evidence of other, uncharged misconduct has a legitimate tendency to prove the specific crime charged when it "tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial." *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992) (citation omitted). "Evidence of prior misconduct that does not fall within one of the five enumerated exceptions may nevertheless be admissible if the evidence is logically and legally relevant." *State v. Bernard*, 849 S.W.2d, 10, 13 (Mo. banc 1993) (citation omitted).

Here, the State introduced three text messages through Officer Endsley who searched Defendant's apartment and Defendant's cell phone. Regarding Exhibit 23A, Officer Endsley testified as following:

[State]: And how would you characterize what is being – the subject matter of that text message?

[Officer]: I would characterize it that he's looking for a new sexual relationship with someone.

[State]: And the name that he gives at the bottom of that text, what was notable to you about that in terms of your investigation of the sexual relationship he had with [Victim]?

[Officer]: The name **_Adam_** was the same name that he gave [Victim]. That's what he said his name was to her.

(emphasis added). Officer Endsley further testified he found no evidence that Defendant went by "Adam" in any of the legitimate areas of his life. Officer Endsley subsequently testified regarding Exhibit 23B as following:

[State]: And what had [Defendant] told you about whether he even used chatlines as of late?

[Officer]: He told me that he had used a telephone chatline in the past. When asked if January – if he had used one since January of 2013, he said he had not.

[State]: All right. And in fact, we know that he only had that phone from May 19th forward, is that correct?

[Officer]: That's correct.

Officer Endsley then testified regarding Exhibit 23C as following:

[State]: And additionally, [Defendant] uses some terms in there. He uses the terms, and correct me if I'm wrong, about he parties and he craves. Based on your experience investigating criminal activity, investigating both sex crimes, investigating drug activity, what is the significance of those terms?

. . . .

[Officer]: In my experience, the term I like to party works both in prostitution, prostitutes asking johns if they want to party to get a conversation going. Party is also used in terms of drug sales, drug usage.

We find the three text messages admissible because they were both logically and legally relevant to prove the crimes which Defendant was charged with. First, the text messages established that Defendant was active on chat-lines after January 2013, which contradicts his statement to the police. As part of his scheme, Defendant also used chat-lines for soliciting sexual partners. Second, the text messages showed Defendant's intent to mix sex and drugs. Third, the text messages established Defendant used the pseudonym, "Adam," as testified by Victim.

Because Defendant met Victim through a chat-line using his pseudonym, "Adam," and used drugs on Victim and himself in committing the sex acts, the three text messages had a legitimate tendency to directly establish Defendant's guilt of

the crimes charged. Therefore, the text messages were logically relevant. Also, because the text messages tend to corroborate Victim's testimony as to how Defendant committed the crimes against her and Defendant's identity, they were probative. The balancing of the evidence's probative value against its prejudicial effect on the jury rests within the sound discretion of the trial court, *Campbell*, 143 S.W.3d at 700, and we do not find any reason in the record to conclude the trial court here abused said discretion. *See also State v. Bernard*, 849 S.W.2d 10, 17 (Mo. banc 1993) (holding the evidence of the defendant's prior sexual misconduct may be admitted to corroborate the testimony of the victim). Therefore, the trial court did not err in admitting the three text messages into evidence.

(ECF No. 9-7 at 5-8.)

"Questions regarding admissibility of evidence are matters of state law." Rousan, 436 F.3d at 958. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." Sittner 969 F.3d 846, 849-50 (quoting Bucklew, 436 F.3d at 1018). Accordingly, to succeed on these grounds, Wilburn "must show 'that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" Id. at 850 (quoting Rousan, 436 F.3d at 958-59).

Here, Wilburn has not established a due process violation based on admission of the text evidence. See Anderson, 44 F.3d at 679 (for a due process violation to occur from an evidentiary ruling, the ruling must have been wrong and Petitioner must show that "absent the alleged impropriety the verdict probably would have been different."). The Missouri Court of Appeals' decision is not contrary to, nor is it an unreasonable application of, clearly established law as determined by United States Supreme Court, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379. As such, the decision is entitled to deference.

Grounds Two, Three, and Four are denied.

C. <u>Ground Five</u>

In this ground, Wilburn alleges trial court error in excluding under Missouri's rape shield statute evidence that the victim lied under oath at a deposition when she was asked whether she had ever engaged in sexual conduct with anyone other than Wilburn. Petitioner asserts:

> The trial court abused its discretion in sustaining the State's objections and refusing defense counsel's offer of proof and the introduction into evidence of the unquestioned fact that the alleged victim had lied under oath at a deposition (Ex. D attached hereto at p. 38) when she was asked whether she had ever engaged in sexual conduct with anyone other than the Movant. The trial court relied on and interpreted Section 491.015, RSMO ("rape shield statute") to preclude clear and obvious evidence that she was capable and willing to lie under oath. Without question it would have shattered her credibility and significantly eroded her claims against Movant. Excluding this evidence erected an impossible barrier that Movant could not penetrate to help him prove that the alleged victim was an unreliable witness. Excluding this evidence violated movant's rights to present a defense and to a fair trial as guaranteed to him by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Movant was not interested in her previous sexual peccadillos but rather sought to establish that she was capable of and willing to violate her sworn oath. The evidence was relevant and critical to Movant's defense. The alleged victim had clearly lied in her deposition (*Id.*) and in her CAC interview about her other sexual experiences. These lies were revealed when the results of the DNA test performed on her sweatpants revealed sperm and semen that belonged to someone other than Movant. She eventually confessed to her lies to the Victim Advocate, Vickie Roberts. (Ex. A2, pp. 789-90, 794-96). The trial court's erroneous ruling was aggravated by the State's closing argument wherein the prosecutor claimed that "[t]here is no evidence that [the alleged victim] is a schemer, a manipulator, a liar." (Id. at 845).

(ECF No. 6 at 22.)

The Missouri Court of Appeals found that the excluded evidence of the victim's lie was not relevant or admissible, the evidence of a specific instance of the victim's prior sexual conduct did not fall within any exception of the Missouri rape shield statute, and the matter on which the victim lied was immaterial and collateral, and therefore the trial court did not abuse its discretion in excluding the evidence:

> In Point V, Defendant asserts the trial court abused its discretion in sustaining the State's objection to defense counsel's offer of proof and excluding evidence that Victim lied in a sworn deposition about her recent past sexual conduct. Defendant argues that the trial court's interpretation of Section 491.015

14

violated Defendant's rights to present a defense and to a fair trial since the evidence was offered to demonstrate that Victim was not a credible witness. We disagree.

We review a trial court's decision on the admission of evidence for abuse of discretion. *Reed*, 282 S.W.3d at 837. "This standard gives the trial court broad leeway in choosing to admit evidence[.]" *Id.* An abuse of discretion occurs where the trial court's ruling was "clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Winfrey*, 337 S.W.3d at 5 (internal quotation marks and citation omitted). The trial court does not abuse its discretion when excluding offers of impeachment on immaterial or collateral matters. *State v. Smith*, 996 S.W.2d 518, 521 (Mo. App. W.D. 1999) (citation omitted).

Section 491.015, the rape shield statute, provides in part that evidence of specific instances of the complaining witness' prior sexual conduct is inadmissible, except where such specific instances are:

> (1) Evidence of the sexual conduct of the complaining witness with the defendant to prove consent where consent is a defense to the alleged crime and the evidence is reasonably contemporaneous with the date of the alleged crime; or
> (2) Evidence of specific instances of sexual activity showing alternative source or origin of semen, pregnancy or disease;
> (3) Evidence of immediate surrounding circumstances of the alleged crime; or
> (4) Evidence relating to the previous chastity of the complaining witness in cases, where, by statute, previously chaste character is required to be proved by the prosecution.

Accordingly, evidence of specific instances of a victim's prior sexual conduct is admissible only if it falls within the specific exceptions in the statute and then only to the extent that the court finds it relevant to a material fact or issue in the case. *See State v. Hale*, 917 S.W.2d 219, 221 (Mo. App. W.D. 1996). Here, Defendant concedes that none of the exceptions apply in his case. We are obligated to follow and apply the law as written. *State v. Williams*, 24 S.W.3d 101, 115 (Mo. App. W.D. 2000) (citation omitted). Nonetheless, Defendant argues that the evidence should have been admitted since it was offered to prove Victim lied under oath, rather than to show Victim's prior sexual conduct.

During the deposition, Victim stated she never had sex before she had sex with "Adam." However, when interviewing with the victim's advocate, Victim admitted that she had sex with someone named D. . . a few days before having sex with "Adam." It is this "lie" which Defendant sought admission as evidence to attack Victim's credibility.

"[A]s a general proposition, the credibility of witnesses is always a relevant issue in a lawsuit." *Smith*, 996 S.W.2d at 521 (citation omitted). However, "attacks on a witness' credibility in criminal proceedings are subject to limitations, and not every attack will be allowed." *Id.* (citation omitted). The mere fact that a witness

lied does not automatically make the "lie" admissible as impeachment evidence regardless of its admissibility, relevancy, or remoteness of the subject matter. *Id.* at 521–22.

We find *State v. Smith*, 996 S.W.2d 518 (Mo. App. W.D. 1999), instructive here. In *Smith*, the defendant was convicted of first-degree statutory sodomy. *Id.* at 519. On appeal, he claimed that the trial court erred in precluding the cross-examination of the victim regarding whether she lied under oath in her deposition. *Id.* at 521. The defendant argued that he was denied his right to a fair trial and due process because the "evidence went to [the victim's] credibility and the credibility of a witness is always relevant and admissible." *Id.* During the deposition, the victim responded in the negative to the questions asking whether she ever let a boy "go up [her] shirt" or "down [her] pants." *Id.* Sometime thereafter, while still being deposed, the victim stated she lied about the two prior questions. *Id.* Relying on *State v. Madsen*, 772 S.W.2d 656 (Mo. banc 1989), the *Smith* court held that the evidence relating to the victim's statements did not fall within the four exceptions of the rape shield statute and, accordingly, was irrelevant and inadmissible. *Id.* at 522.

Likewise, we find the evidence that Victim "lied" under oath regarding whether she had sexual relations with someone other than Defendant was not relevant or admissible. The evidence of a specific instance of Victim's prior sexual conduct did not fall within the four exceptions of the rape shield statute. Furthermore, Victim "lied" on a matter that is immaterial and collateral. Thus, the offered impeachment evidence was irrelevant and inadmissible such that the trial court did not abuse its discretion in excluding the evidence.

(ECF No. 9-7 at 11-14) (footnote omitted).

This ground also raises a question regarding admissibility of evidence, which is a matter of state law. Rousan, 436 F.3d at 958. "A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process." Sittner 969 F.3d 846, 849-50 (quoting Bucklew, 436 F.3d at 1018). Accordingly, to succeed on this ground, Wilburn "must show 'that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" Id. at 850 (quoting Rousan, 436 F.3d at 958-59).

Here, Wilburn has not established a due process violation based on the trial court's exclusion of his offer of proof and evidence of the victim's lie concerning whether she had previously had sex with anyone else. Discussing Missouri's rape shield statute in the state habeas

context, the Eighth Circuit has observed that the "Supreme Court has recognized constitutional rights can trump evidentiary rules and privileges in some circumstances." <u>Sittner</u>, 969 F.3d at 851 (citing cases). In each case, however, "the Court found the trial court violated a defendant's right to cross-examination by excluding evidence relatively likely 'to show a prototypical form of bias on the part of' a critical witness." <u>Id.</u> Here, Wilburn does not establish such circumstances or a due process violation.

Under the restrictive limits of federal habeas review, the Missouri Court of Appeals' decision is not contrary to, nor is it an unreasonable application of, clearly established law as determined by United States Supreme Court, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2); <u>Williams</u>, 529 U.S. at 379. As such, the decision is entitled to deference.

Ground Five is denied.

D. <u>Ground Six</u>

In ground six, Wilburn asserts a claim of plain error by the trial court in connection with the State's closing argument, that resulted in a due process violation:

> The trial court plainly erred in allowing the State to argue in closing that there was "no evidence that D.F. was a schemer, a manipulator, or a liar, and that if defense counsel could have thought of a motive, counsel would have suggested one." *Id.* The closing argument continued to push the false narrative that the alleged victim always spoke the truth, an untrue narrative that resulted from the trial court's erroneous ruling excluding the testimony that she lied multiple times during the investigation. The disingenuous closing argument violated Mr. Wilburn's rights to due process of law and a fair trial before an impartial jury, guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution. The trial court sustained the State's objection to the evidence that the alleged victim had previously lied under oath in a deposition. The prosecutor urged the jury to consider the fact that there was no evidence that D.F. was a liar, when evidence that she had lied under oath was excluded at the State's motion, resulted in a manifest injustice. Such prosecutorial misconduct can result in manifest injustice, even when the state has a strong case. The State's rape shield statute should not deprive a criminal defendant "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683,688 (1986).

(ECF No. 6 at 23.)

The Missouri Court of Appeals found there was no plain error under Missouri law and, alternatively, that the argument was not improper.

> In Point VI, Defendant asserts the trial court plainly erred in allowing the State to argue in closing that there was no evidence that Victim was a schemer, a manipulator, or a liar and that defense counsel would have suggested a motive if counsel could have thought of one. Defendant argues that the State's argument resulted in manifest injustice because the evidence that Victim had lied under oath was excluded on the State's motion. We disagree.
>
> Defendant failed to object to the statement at trial and, accordingly, requests that we review this claim for plain error under Rule 30.20. When plain error review is requested, we commence a two-step analysis. *State v. Wrice*, 389 S.W.3d 738, 742 (Mo. App. E.D. 2013). First, we determine whether plain error occurred, which is error that is evident, obvious, and clear. *Id.* If so, secondly we determine whether the error resulted in manifest injustice or a miscarriage of justice. *Id.* To find manifest injustice, we must find that the trial court's error in admitting the evidence was outcome determinative, having a decisive effect on the jury's determination. *Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002).
>
> During closing arguments, defense counsel argued that there was no physical evidence to support Victim's testimony regarding the sex crimes which Defendant was charged with. Defense counsel further argued in part:
>
> > What are you left with? Speculation and conjecture. Are you going to take away someone's liberty on these very serious offenses on the testimony of a girl who agrees that something happened and also agrees that nothing happened?
>
> In rebuttal argument, the State responded to the defense's arguments by stating:
>
> > But [Victim] is an honest girl. There is no evidence that she is a schemer, a manipulator, a liar. There is not one ounce of motive. And if defense counsel could have thought of one, they would have suggested one to you. . . .
>
> Counsel is permitted substantial latitude in closing argument, and appellate court will rarely grant relief on a claim that the trial court plainly erred in failing to *sua sponte* take remedial action during oral argument. *State v. Plummer*, 860 S.W.3d 340, 349 (Mo. App. E.D. 1993). "The defendant's failure to object to an improper argument is often strategic, and uninvited intervention may emphasize the matter in a way the defendant chose not to." *State v. Carter*, 415 S.W.3d 685, 691 (Mo. banc 2013) (citation omitted).

We agree with Defendant that the State may not refer to evidence that the trial court has excluded. *See State v. Williams*, 119 S.W.3d 674, 680 (Mo. App. S.D. 2003) ("Missouri law is well-settled that a prosecutor commits error by commenting on or referring to evidence or testimony that the court has excluded."). However, the State's rebuttal argument that Victim was an honest girl and that there was no evidence that Victim was a liar was in response to defense counsel's argument that there was only speculation and conjecture in the case and that the jury should not base its decision on the testimony of Victim who made inconsistent statements. "Prosecutors have considerable leeway to make retaliatory arguments at closing and may rebut any issue raised by the defense." *Id.* Here, the State's closing was not improper because it rebutted defense counsel's attack on the believability of Victim's testimony. There was no evidence that Victim lied about having sex with Defendant. To the contrary, Victim consistently gave explicit and specific details about the incident. We do not find the argument referred to excluded evidence.

Even if, *arguendo*, the State's comments referred to evidence or testimony that the court had excluded, the error did not result in manifest injustice or miscarriage of justice. In arguing for manifest injustice, Defendant relies on *State v. Hammonds*, 651 S.W.2d 537 (Mo. App. E.D. 1983), and *State v. Williams*, 119 S.W.3d 674 (Mo. App. S.D. 2003). However, those cases are readily distinguishable. In both *Hammonds* and *Williams*, the prosecutors commented on excluded evidence which tended to directly exculpate the defendants. *See Hammonds*, 651 S.W.2d at 539 and *Williams*, 119 S.W.3d at 677, 681. Accordingly, the court in both *Hammonds* and *Williams* held such comments were deliberate misrepresentation of the facts, resulting in manifest injustice.

Unlike *Hammonds* or *Williams*, here, the excluded evidence that Victim lied in  the  deposition regarding her prior sexual conduct did not tend to directly exculpate Defendant. As stated *supra*, Victim's alleged "lie" went to a collateral matter, protected by the rape shield statute, not to Defendant's guilt. Furthermore, the State did not argue that Defendant was guilty of the crimes because Defendant was the only person who had sexual contact with Victim. Therefore, the State's comments did not have a decisive effect on the jury's determination of Defendant' guilt. Accordingly, the trial court did not err, plain or otherwise.

(ECF No. 9-7 at 14-16) (footnotes omitted).

Wilburn sought plain error review of this claim on direct appeal. The Missouri Court of

Appeals reviewed the merits of Wilburn's closing argument error claim for plain error and

concluded there was none, and then made an alternative merits ruling and found no error.

A claim must be presented at each step of the judicial process in state court in order to

avoid procedural default. Jolly, 28 F.3d at 53 (citing Benson v. State, 611 S.W.2d 538, 541 (Mo.

Ct. App. 1980)). A federal habeas court "cannot reach an otherwise unpreserved and procedurally defaulted claim merely because a reviewing state court analyzed that claim for plain error." Clark v. Bertsch, 780 F.3d 873, 874 (8th Cir. 2015). Further, a state court's reliance on both a procedural bar and a merits decision in alternative holdings does not remove the procedural bar. Harris v. Reed, 489 U.S. 255, 264, n.10 (1989).

This Court may review the merits of the claim in Ground Six only if cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Wilburn shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim. Coleman, 501 U.S. at 750.

Here, Wilburn makes no attempt to assert cause and actual prejudice.  As a result, he fails to demonstrate cause for his procedural default. If a prisoner fails to demonstrate cause, the court need not address prejudice. Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007). Nor has Wilburn shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Wilburn has presented no new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent.  Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006).

The claim raised in Ground Six is procedurally barred from habeas review and is dismissed.

E. Ground Seven

In Ground Seven, Wilburn asserts trial court error in denying his oral motion for a continuance and to appoint new trial counsel, made on the second day of trial:

> The trial court erred in denying Mr. Wilburn's oral motion for a continuance and to appoint alternative trial counsel, because this ruling violated Mr. Wilburn's rights to due process, to unconflicted trial counsel, and to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. It was apparent from the record that there was a total breakdown in communication between counsel and Movant. Movant believed that counsel had consistently failed to respond to him or investigate his case, even when he contacted counsel's supervisor and the Office of the Chief Disciplinary Counsel

(See Exhibits E-L attached hereto), and as evidenced by Movant's letters to trial counsel, (Ex. A1, pp. 318, 319, 32l, and Ex. A2, pp. 557, 561). Trial counsel admitted that it was difficult to effectively and aggressively defend Mr. Wilburn when he was attacking her during the trial. (Ex. A1, p. 320 and Ex. A2, pp. 557, 560) The State also acknowledged at trial that there was a breakdown in the relationship between Mr. Wilburn and counsel. (Ex. A2, p. 570).

(ECF No. 6 at 23-24.)

The Missouri Court of Appeals held the trial court did not err, finding Wilburn did not produce objective evidence of an irreconcilable conflict with counsel, i.e., a total breakdown in communication with his attorney, and also finding the motion was untimely:

> In Point VII, Defendant asserts the trial court erred in denying Defendant's oral motion or a continuance and to appoint alternative counsel. Defendant argues that the record supports a total breakdown in communication between counsel and Defendant. We disagree.
>
> Before the jury panel was brought in on the second day of trial, Defendant addressed the court and asked for a continuance and a different attorney. Defendant stated he "would like to bring up [his] time with [trial counsel] and [their] disagreements on how things have been going." Defendant wanted the evidence that someone else's DNA was found in the semen stain on Victim's clothing to be admitted to impeach Victim. Defendant stated he had written letters to his trial counsel numerous times about using the DNA evidence, but had received no replies. Defendant also stated he could not get his counsel or counsel's investigator to investigate the case on his behalf. Defendant asked for a continuance, a different public defender, and "the same amount of effort for [his] case as the prosecution's." The trial court denied the request, noting that both sides had ample opportunity to prepare and that it appeared Defendant's counsel was prepared to proceed. Defendant made the same request on the third day of trial, which the court denied.
>
> While a defendant has a constitutional right to legal counsel, he does not have an absolute right to be represented by counsel of his own choosing. *State v. Briggs*, 318 S.W.3d 203, 206 (Mo. App. W.D. 2010); *State v. Rice*, 249 S.W.3d 245, 251 (Mo. App. E.D. 2008). The right to be represented by chosen counsel is limited "to the extent that it impinges on the public's right to effective and efficient administration of justice." *Briggs*, 318 S.W.3d at 206. To obtain a change of attorney on the eve of trial, a defendant must produce objective evidence of an irreconcilable conflict with counsel, which is a total breakdown in communication between the defendant and his attorney. *State v. Owsley*, 959 S.W.2d 789, 792 (Mo. banc 1997) (internal quotation marks and citations omitted). "Proof of a total breakdown in communication is established . . . not only by the interaction between the two, but also by counsel's statements to others and counsel's ineffective assistance throughout the proceedings." *Id.* Neither disagreement about trial strategy nor a general dissatisfaction with the amount of time defendant is able to

spend with counsel is sufficient to establish a total breakdown in communication. *Rice*, 249 S.W.3d at 251.

It is within the trial court's discretion to deny a motion for a continuance to obtain new counsel. *Rice*, 249 S.W.3d at 251. We will not interfere unless there has been a clear abuse of discretion. *State v. Johnson*, 328 S.W.3d 385, 398 (Mo. App. E.D. 2010). An abuse of discretion occurs where the trial court's ruling was "clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Winfrey*, 337 S.W.3d at 5 (internal quotation marks and citation omitted).

Here, the record reflects Defendant did not provide the trial court with objective evidence of a total breakdown in communication between Defendant and trial counsel. The only evidence presented to the trial court was Defendant's subjective assertion that trial counsel never replied to his mails and never investigated his case.

In the absence of objective evidence of a total breakdown in communication, the trial  court found Defendant's trial counsel had "zealously," "competently," "ethically," and "appropriately" represented Defendant at both the pretrial and trial stages. The records indicate trial counsel filed pre-trial motions, *inter alia*, motion in limine to exclude prior bad acts and motion to allow admission of Victim's prior sexual conduct. Trial counsel also conducted depositions and inspected the physical evidence and the documents provided. As Defendant wished, trial counsel also raised the DNA issue and filed a motion with the court, which the court denied.

Furthermore, Defendant raised his complaints regarding trial counsel to the court on the second day of the trial, despite alleging the complaints were at least nine months in duration. The trial court pointed out, and Defendant conceded, that Defendant's motion for change of counsel was untimely brought. Accordingly, the trial court balanced the public's right to effective and efficient administration of justice with Defendant's constitutional right to counsel.

Considering the foregoing evidence, we do not find the trial court's decision to deny Defendant's motion for a continuance to obtain new counsel was clearly against the logic of the circumstances or was so unreasonable as to indicate a lack of careful consideration. Therefore, the trial court did not abuse its discretion.

(ECF No. 9-7 at 16-19.)

"Justifiable dissatisfaction sufficient to merit substitution of counsel includes 'a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.'" United States v. Swinney, 970 F.2d 494, 499 (8th Cir. 1992) (quoted case omitted). The focus of the justifiable dissatisfaction inquiry is the adequacy of counsel in the

adversarial process, not the accused's relationship with his attorney. See Wheat v. United States, 486 U.S. 153, 159 (1988). "Last minute requests to substitute defense counsel are not favored." United States v. Klein, 13 F.3d 1182, 1185 (8th Cir. 1994). The Missouri Court of Appeals' decision is not contrary to, nor is it an unreasonable application of, clearly established law as determined by United States Supreme Court, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379. As such, the decision is entitled to deference.

Ground Seven is denied.

F.  Ground Eight

In Ground Eight, Wilburn asserts the trial court erred in overruling his motion for judgment of acquittal:

> The trial court erred in overruling Mr. Wilburn's motion for judgment of acquittal at the close of all evidence, and in entering judgment and sentence for Counts I, II, III, and IV, because this violated Mr. Wilburn's rights guaranteed by the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution. There was insufficient evidence to establish that D.F. was less than fourteen years of age when taking into account Section 1.205.1(1) RSMO, which states that "[t]he life of each human being begins at conception." Under the rule of lenity, any ambiguity in when a person's life begins must be resolved in favor of the defendant.

(ECF No. 6 at 24.)

The Missouri Court of Appeals declined to consider this claim on direct appeal, finding that Wilburn never presented it to the trial court:

> In Point VIII, Defendant asserts the trial court erred in overruling Defendant's motion for judgment of acquittal at the close of all evidence, and in entering judgment and sentence for the sex crimes because there was insufficient evidence to establish that Victim was less than fourteen years of age. Defendant argues that Section 1.205.1(1) states, "[t]he life of each human being begins at conception," and that any ambiguity in when a person's life begins must be resulted in favor of Defendant per the rule of lenity.
>
> Although Defendant frames his argument as an attack on the sufficiency of the evidence,  defendant is actually attempting to raise an argument that was not

raised before the trial court. The crux of Defendant's argument is that the State failed to produce sufficient evidence to establish Victim was less than fourteen years old pursuant to Section 1.205.1(1). At trial, the State established that Victim was thirteen years old at the time of the crimes by admitting into evidence Victim's birth certificate and by eliciting testimony from witnesses.

As Defendant conceded at oral argument before this Court, the trial court was not  presented with the argument that Section 1.205.1(1) should apply to Defendant's case when establishing Victim's age. "An issue that was never presented to or decided by the trial court is not preserved for appellate review." *State v. Davis*, 348 S.W.3d 768, 770 (Mo. banc 2011) (internal quotation marks and citations omitted). Accordingly, Defendant's argument is not preserved for our review and we will not convict the trial court of error on an issue that was never before the trial court to decide. *See State v. Julius*, 453 S.W.3d 288, 298 (Mo. App. E.D. 2014).

Further, Defendant does not request us to review his claim for plain error. Plain error review is discretionary, and we will not review for plain error *sua sponte*; Defendant must request it. *See State v. Edwards*, 280 S.W.3d 184, 188 (Mo. App. E.D. 2009) (declining to review the defendant's unpreserved claim under plain error review *sua sponte* because the defendant had not requested for plain error review).

(ECF No. 9-7 at 19-20).

To preserve issues for federal habeas review, a state prisoner must fairly present his claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150. Where a prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, such as failing to raise claims on appeal, federal habeas review of the claims is barred. Coleman, 501 U.S. at 750.

As stated above, a petitioner may overcome the procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or that failure to review the claim would result in a fundamental miscarriage of justice. Id. To satisfy the "cause" requirement, Petitioner must show that an "external" impediment prevented him from presenting his claim to the state court in a procedurally proper manner. Id. at 753.

24

Wilburn makes no attempt to establish cause and prejudice to overcome his procedural default. As a result, he fails to demonstrate cause for his procedural default. If a prisoner fails to demonstrate cause, the court need not address prejudice. <u>Cagle</u>, 474 F.3d at 1099. Nor has Wilburn shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Wilburn has presented no new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. <u>Abdi</u>, 450 F.3d at 338.

The claim raised in Ground Nine is procedurally barred from habeas review and is dismissed.

G. <u>Grounds Nine, Ten, and Eleven</u>

In these grounds, Wilburn claims of ineffective assistance of trial counsel:

<u>GROUND NINE</u>

Trial counsel failed to adequately challenge and cross examine the alleged victim concerning inconsistencies in her statements to the police, the social worker (Cherie Magueja) at the hospital where she was initially taken, her mother's boyfriend (Paul Dampf), and witnesses named in the child adolescent psychiatric consolation report. As a result, Movant's rights to present a complete defense, his right to effective assistance of counsel, his right to cross-examine witnesses, and his right to due process of law as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the Constitution were violated.

<u>GROUND TEN</u>

Trial counsel failed to keep Movant adequately informed of the progress, if any, of her investigation, the law of evidence applicable to his case, and to allow him to participate in formulating a strategy of defense prior to his trial. This total failure of communication and failure to educate Movant of the facts and law applicable to is case was in violation of his rights as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the Constitution.

<u>GROUND ELEVEN</u>

Trial counsel failed to file a Motion for Change of Venue, despite being requested by Movant to do so and despite the barrage of publicity that surrounded his arrest and pending trial. The prosecuting attorney for St. Charles County gave numerous televised and newspaper interviews (Ex. M attached hereto) about the

case and made it clear in those interviews that he believed that Movant was guilty of the crimes he was charged with. As a result, the jurors and jury pool were exposed to a high degree of negative publicity. Movant was denied his right to a fair and impartial jury, uninfected by the statements made by the prosecuting attorney to local news media in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(ECF No. 6 at 24-24.)

These three ineffective assistance of trial counsel claims were raised in Wilburn's pro se motion for post-conviction relief, but were not included in the amended post-conviction relief motion filed by appointed counsel. A claim must be presented at each step of the judicial process in state court in order to avoid procedural default. Jolly, 28 F.3d at 53 (citing Benson, 611 S.W.2d at 541).

This Court may review the merits of the claims in Ground Nine, Ten, and Eleven only if cause is shown for the default and actual prejudice resulted from the alleged constitutional violation, or if Wilburn shows that a fundamental miscarriage of justice would occur if the Court were not to address the claim.  Coleman, 501 U.S. at 750.

Here, Wilburn makes no attempt to assert cause and actual prejudice.  As a result, he fails to demonstrate cause for his procedural default. If a prisoner fails to demonstrate cause, the court need not address prejudice. Cagle, 474 F.3d at 1099. Nor has Wilburn shown that a fundamental miscarriage of justice would occur if the Court does not review the merits of the claim. Wilburn has presented no new evidence of actual innocence, nor has he shown that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Abdi, 450 F.3d at 338.

The claims raised in Grounds Nine, Ten, and Eleven are procedurally barred from habeas review and are dismissed.

H. Ground Twelve

In this ground, Wilburn asserts trial court error in not allowing trial counsel to withdraw and failing to appoint new counsel:

26

The trial court erred in not allowing trial counsel to withdraw and to appoint new counsel after being advised about the increasing breakdown of communications between trial counsel and Movant. Failure to allow trial counsel to withdraw violated Movant's rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

(ECF No. 6 at 25.)

This is the same claim Wilburn raised in Ground Seven, discussed above, and it fails for the same reasons. The Missouri Court of Appeals' decision denying this claim is not contrary to, nor is it an unreasonable application of, clearly established law as determined by United States Supreme Court, nor was it a decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. §§ 2254(d)(1), (2); Williams, 529 U.S. at 379. As such, the decision is entitled to deference.

Ground Twelve is denied.

I. Ground Thirteen

In this ground, Wilburn asserts ineffective assistance of appellate counsel for failing to raise arguments on direct appeal:

Appellant counsel, Samuel Buffaloe was ineffective for not raising on Movant's direct appeal that State's opening and closing statements (See Paragraphs 11 b., c., d., of this motion), and introducing into evidence text messages which went to an unidentified person which referenced his sexual preferences and supposedly convincing a woman to send him money using a chatline.

The evidence was not relevant to the crimes charged, was more prejudicial than probative and thus violated Movant's rights to due process of law, his right to a fair trial before a fair and impartial jury, and his right to effective assistance of appellate counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the Constitution.

(ECF No. 6 at 25-26.)

This claim was not raised in the post-conviction appeal brief and therefore is procedurally barred. A claim must be presented at each step of the judicial process in state court in order to avoid procedural default. Jolly, 28 F.3d at 53 (citing Benson, 611 S.W.2d at 541). "A federal

habeas claim must rely on the same factual and legal bases relied on in state court." <u>Interiano v.</u>
<u>Dormire</u>, 471 F.3d 854, 856 (8th Cir. 2006).

This Court may review the merits of the claims in Ground Thirteen only if cause is shown
for the default and actual prejudice resulted from the alleged constitutional violation, or if Wilburn
shows that a fundamental miscarriage of justice would occur if the Court were not to address the
claim.  <u>Coleman</u>, 501 U.S. at 750.

Here, Wilburn makes no attempt to assert cause and actual prejudice.  As a result, he fails
to demonstrate cause for his procedural default. If a prisoner fails to demonstrate cause, the court
need not address prejudice. <u>Cagle</u>, 474 F.3d at 1099. Nor has Wilburn shown that a fundamental
miscarriage of justice would occur if the Court does not review the merits of the claim. Wilburn
has presented no new evidence of actual innocence, nor has he shown that a constitutional violation
has probably resulted in the conviction of one who is actually innocent. <u>Abdi</u>, 450 F.3d at 338.

The claims raised in Ground Thirteen are procedurally barred from habeas review and are
dismissed.[2]

J. <u>Grounds Fourteen and Fifteen</u>

In Grounds Fourteen and Fifteen, Wilburn claims his trial counsel was ineffective for not
objecting to two portions of the State's closing argument, where the prosecutor referred to him as
being like a lion and the victim as being like weak prey, and improperly personalized the jurors by
urging the jury to "send a message" to the community about behavior of an adult toward a child:

<u>GROUND FOURTEEN</u>

Trial counsel was ineffective for failing to object and request the trial court
to instruct the jury to disregard the prosecutor's statement during closing argument
comparing Movant to a "lion" and D.F. as weak prey. These failures deprived

---

[2]With respect to the text messages discussed in Paragraphs 11b., c., and d. of the Amended Petition
and referenced in Ground Thirteen, direct appeal counsel briefed these claims as Points II, III, and IV. <u>See</u>
Appellant's Brief at 23-25 (ECF No. 9-4). Appellate counsel cannot be held ineffective for failing to brief
claims that were, in fact, briefed.

Movant of his constitutional rights to due process of law, to effective assistance of counsel, his right to present a defense and his right to a fair trial before a unbiased and fair jury, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Trial counsel's failure to object and request an instruction for the jury to disregard the State's misstatement and inflammatory closing argument that Movant was a "lion" and D.F. was weak prey prejudiced Movant. There was no reasonable or contemplated trial strategy which would justify trial counsel's failure to object and request an instruction directing the jury to disregard this highly improper argument. Trial counsel should have objected and requested the Court to instruct the jury to disregard the statement during the State's closing argument because there was no evidence to support this prejudicial comparison. The State's reference that Movant was a "lion" and D.F. was weak prey allowed the jury to believe Movant was a predator even though there was no evidentiary support for this claim. But for trial counsel's failure, the outcome of the proceedings would have been different.

<u>GROUND FIFTEEN</u>

Trial counsel was ineffective for failing to object to the State's closing argument that specifically personalized the jurors. The argument was meant to and did appeal to the jury's passions and prejudices. Trial counsel also failed to request the Court to instruct the jury to disregard the State's closing argument comment. Finally, even though counsel's objections would have been sustained and the pertinent jury instruction would have followed, the argument and comments were egregious enough to support a request for a mistrial. The prosecutor's offense arguments included statements to the jury that "…as you sit here today though, the twelve of you that decide this case will be amongst the twelve most influential people in this child's life. You will be the ones to send a message to that child and to the community of both people who are out there protecting children and the community of children themselves and our community about what do we accept in the behavior of an adult toward a child" (Ex. A2, p. 843); "And it is our job as a community to make sure that that doesn't happen. We cannot do anything about the existence of William Wilburns who do not care how old this person is if it is something that would satisfy a carnal appetite of his. His self-described moral standards are pretty deteriorated. I think that is evident. But where we have to draw the line is requiring that the good people of our community will step up and make sure that our children are protected, even if they make a bad judgment call, even if they're uniquely vulnerable" (Ex. A2, p. 852); and "And I ask that you let her know that was the right thing to do, and let her carry that as she unfolds this experience throughout her life as she becomes an adult woman and looks back on this. And let her go into her adult life knowing that a terrible thing happened to me as a kid, and I made a mistake, but good people recognized that I was exploited by an opportunistic, conniving man, and the right thing was done, and I can rest assure that I still live in a community of people who will do the right thing". (Ex. A2, pp. 852-853) These arguments deprived Movant of his constitutional rights to due process of law, to effective assistance of counsel, to present a defense and to a fair

trial before a fair and unbiased jury in violation of the Fifth, Sixth, and Fourteenth
Amendments to the United States Constitution.

Trial counsel's failure to object to the State's improper argument ended up
transposing the job of the jury from carefully weighing the evidence into a group
whose job it was to convict, and the argument had the effect of personalizing the
jury into believing that it was their duty and job to convict the defendant in order
to protect the alleged victim. The argument was meant to and did appeal to the
jurors' passions and prejudices and to inflame them in such a way as to convict the
Movant based on sympathy for the alleged victim and a sense of duty to her. The
argument appealed to the jurors' passions and prejudices by making them feel as if
their job were to convict Movant regardless of the evidence and that they would be
letting the community and the alleged victim down if they did not convict Movant.
The State's closing argument had a decisive effect on the jury's verdict and was
prejudicial to the Movant and his right to a fair trial and violated the rights
guaranteed to him under the Fifth, Sixth, and Fourteenth Amendments to the U.S.
Constitution.

(ECF No. 6 at 26-28.)

The Missouri Court of Appeals, reviewing the post-conviction denial of Wilburn's Rule

29.15 motion, found the argument was reasonable and proper where Wilburn, a forty-seven-year-

old man, injected a thirteen-year-old girl with drugs and then engaged in oral and penetrative sex

with her. The court first articulated its standard of review for claims of ineffective assistance of

counsel, and then applied the standard to Wilburn's claims, which it addressed together:

For relief based on claims of ineffective assistance of counsel, Movant must
show by a preponderance of the evidence both that his counsel failed to exercise
the customary skill and diligence of a reasonably competent attorney under similar
circumstances, and that his counsel's deficient performance prejudiced him.
*Anderson v. State*, 196 S.W.3d 28, 33 (Mo. banc 2006) (citing *Strickland v.
Washington*, 466 U.S. 668, 687-92 (1984)). We "presume[] that counsel's conduct
was reasonable and effective," and that any challenged action was part of counsel's
reasonable trial strategy. *Anderson*, 196 S.W.3d at 33; *see also Barnett v. State*, 103
S.W.3d 765, 769 (Mo. banc 2003).

Discussion
Points I and II

In his first and second points on appeal, Movant contends the motion court
erred in denying post-conviction relief after an evidentiary hearing because his trial
counsel was ineffective for failing to object to improper comments by the State
during closing argument. Specifically, he argued that his counsel should have
objected to the statement comparing him to a lion and Victim to prey, and to the

comment that the jurors should send a message to the community about what they consider acceptable behavior of an adult towards a child. Movant further argues that but for counsel's failure to object to these statements, there is a reasonable probability the outcome of the trial would have been different. We disagree.

"An attorney's failure to object during closing arguments only results in ineffective assistance of counsel if it prejudices the accused and deprives him of a fair trial." *Barton v. State*, 432 S.W.3d 741, 754 (Mo. banc 2014) (citation omitted). To prevail on a claim of ineffectiveness for failing to object during closing argument, a movant has the burden to prove the failure to object was not a matter of trial strategy and also caused prejudice. *Id.* Further, because the trial court instructs the jury that the lawyer's arguments are not evidence, prejudice is unlikely to result from the State's arguments during closing statements. *Id.*

Movant first challenges the State's comment during closing argument comparing him to a lion and Victim to weak prey. In full, the comment was: "On whom does the lion prey? On the slow, the weak, the wounded, the very young, but never the strong. So the lesson is, if you do not want to become prey, then you better become strong. Sadly, [Victim] was not strong." Movant argues both that this comment misrepresented the evidence because Victim was not weak prey in that she initiated contact with Movant and it was her idea for them to meet; and that referring to him as a lion was the type of improper personal attack designed to inflame the jury's passions that the Missouri Supreme Court has previously deemed grounds for a new trial in *State v. Banks,* 215 S.W.3d 118, 120-21 (Mo. banc 2007), and thus an objection on this ground would have been meritorious.

During closing argument, the State may argue all reasonable inferences from the evidence. *State v. Walter,* 479 S.W.3d 118, 125 (Mo. banc 2016). While the State has wide latitude, it may not misrepresent the law or the evidence, it may not introduce irrelevant prejudicial matters that would tend to confuse the jury, and it may not make personal attacks on the defendant's character designed to inflame the jury. *See id.* "Prosecutors are allowed, however, to express personal opinions based on the evidence, and to invite the jury to draw inferences from the evidence."" *State v. Rasheed,* 340 S.W.3d 280, 286 (Mo. App. E.D. 2011).

Here, the State's comment did not directly reference Movant or attack him by specifically calling him a lion, but rather, the comment appears more intended to develop sympathy for the Victim. Although the comment tended to present Movant in a negative light by inferring he preyed upon Victim, in the context here, the State's comment does not rise to the level of an improper ad hominem attack. Moreover, Movant was charged with statutory rape, statutory sodomy, and distributing a controlled substance to a minor, which is inherently predatory behavior, and for the State to argue such was not an improper personal attack but was an inference from the facts. At the time of the crime, Movant was 47 years old and he injected drugs into and engaged in oral and penetrative sex with a girl he believed to be 14 years old, and who was in fact 13 years old. He used a false name and a disposable telephone in his contact with Victim, and he deactivated the number the day after the charged events. To characterize this behavior as predatory

is a reasonable inference from the evidence. *See Walter*, 479 S.W.3d at 125. To the extent Movant attempts to paint Victim, a thirteen year old girl, as a powerful temptress or even an equal participant, consent is no defense to statutory rape and statutory sodomy; this argument both fails and should not have been attempted. See *State v. Stokely*, 842 S.W.2d 77, 81 (Mo. banc 1992). Because the State's argued inference was reasonable from the evidence adduced at trial, any objection by counsel would have been non-meritorious, and we will not find counsel ineffective for failing to make a non-meritorious objection to the State's closing argument. *Wright v. State*, 501 S.W.3d 907, 910 (Mo. App. E.D. 2016).

Next, Movant challenges the State's comments during closing argument that the jury should send a message to Victim and to the community about protecting children. In full, the State commented:

> And as you sit here today, the twelve of you that decide this case will be amongst the twelve most influential people in this child's life. You will be the ones to send a message to that child and to the community of both people who are out there protecting children and the community of children themselves and our community about what do we accept in the behavior of an adult toward a child.

Further, the State noted that there will always be people like Movant who are willing and eager to exploit vulnerable children who are making bad choices, and stated: "[b]ut where we have to draw the line is requiring that the good people of our community will step up and make sure that our children are protected, even if they make a bad judgment call, even if they're uniquely vulnerable." Last, the State asked the jury to "send a message" to Victim that she did the right thing in reporting Movant, by telling her that although she made a mistake, "good people recognized that [she] was exploited by an opportunistic, conniving man, and the right thing was done, and [she] can rest assured that [she] still live[s] in a community of people who will do the right thing."

Movant argues that these statements were improper personalization by the State in that it injected the prosecutor's own personal beliefs and opinions, or in that it aroused the prejudice, passion and fear for the jury by suggesting the case had implications for the jurors themselves. We disagree. The State neither speculated about future crimes involving Movant, nor suggested a danger to the jurors or their families personally were Movant acquitted. *See State v. Tramble,* 383 S.W.3d 34, 39 (Mo. App. E.D. 2012); *see also State v. Deck,* 303 S.W.3d 527,540 (Mo. banc 2010). While the State did call Movant opportunistic and conniving, certainly the evidence supported that Movant seized the opportunity that Victim placed in his path and that he planned to engage in criminal behavior and avoid criminal consequences. *See Walter,* 479 S.W.3d at 125.

Moreover, it is permissible for the State to invite the jury to "send a message" that society will not tolerate certain behavior. *State v. McFadden,* 391 S.W.3d 408, 425 (Mo. banc 2013); *Jones v. State,* 389 S.W.3d 253,258 (MO. [sic] App. E.D. 2012). The State is permitted to argue for the defendant's conviction as

part of the jury's duty to uphold the law, prevent crime, and protect the public. *McFadden,* 391 S.W.3d at 425. Considering the State's comments here, it is clear the State was arguing for Movant's conviction for this particular crime and appealing to the jury's duty uphold the laws and protect the community from the conduct Movant was accused of, which the State was permitted to do under Missouri law. Any objection by counsel would have been non-meritorious, and the failure to make a meritless objection does not constitute ineffective assistance of counsel. *See Wright,* 501 S.W.3d at 910; *Jones,* 389 S.W.3d at 258.

After reviewing the record, we do not have a definite and firm impression the motion court erred in denying Movant's amended motion for post-conviction relief, and thus the findings and conclusions of the motion court are not clearly erroneous. *See* Rule 29.15(k).

(ECF No. 9-16 at 4-8.))

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. Strickland, 466 U.S. at 686. The Supreme Court set forth the standard governing ineffective assistance of counsel claims in Strickland. To establish ineffective assistance, a habeas petitioner must show that (1) his counsel's performance was deficient, or that it "fell below an objective standard of reasonableness," and also that (2) "the deficient performance prejudiced the defense." Id. at 687-88. Strickland provides a "highly deferential" standard to review ineffective assistance of counsel claims by having courts "apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington, 562 U.S. at 104 (quoting Strickland, 466 U.S. at 689).

On federal habeas review, this Court does not determine whether Petitioner's trial counsel provided effective assistance, but instead examines "whether the state court's application of the Strickland standard was unreasonable." See Harrington, 562 U.S. at 101; see also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").

The standard on federal habeas review "is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard." <u>Harrington</u>, 562 U.S. at 101. Instead, the Court must determine "whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard." <u>Id.</u> at 105. "Counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" <u>Gray v. Norman</u>, 739 F.3d 1113, 1117 (8th Cir. 2014) (quoting <u>Strickland</u>, 466 U.S. at 690). "Where a state court concludes that there was no ineffective assistance under this 'highly deferential' standard, a federal court then must review counsel's performance under the 'deferential lens of § 2254(d).'" <u>Id.</u> (quoting <u>Cullen v. Pinholster</u>, 563 U.S. 170, 190 (2011)).

The Missouri Court of Appeals applied the correct legal standard of <u>Strickland</u>, 466 U.S. 668, addressed Wilburn's claims, and concluded the statements in the State's closing argument were proper under Missouri law and any objections by counsel would not have been meritorious. <u>See</u> <u>Williams</u>, 366 S.W.3d at 623-24.

The Court determines that the Missouri Court of Appeals' application of the <u>Strickland</u> standard to these claims of ineffective assistance of defense counsel was not unreasonable for the reasons stated by that court.  <u>See</u> <u>Owens</u>, 198 F.3d at 681; <u>Harrington</u>, 562 U.S. at 101.

Grounds Fourteen and Fifteen are denied.

K.  <u>Ground Sixteen</u>

In Ground Sixteen, Wilburn claims he was denied the effective assistance of counsel because he had an actual conflict of interest of interest with counsel, based on counsel's failure to communicate with him and answer his questions prior to trial:

> Movant was denied his rights to a conflict-free counsel, due process, a fair trial and effective assistance of trial counsel in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution in that trial counsel had an actual conflict of interest because Movant had requested and been denied the removal of trial counsel from his case before his trial and during his trial, even though defense counsel

and the State acknowledged this conflict and defense counsel joined in Movant's request.

Specifically, Movant told the court that he would like another public defender appointed prior to trial because trial counsel never answered his numerous questions about what State's proposed evidence would be allowed against him at trial, what evidence could be introduced as a defense, what the law was surrounding other bad acts evidence, the admissibility of the alleged victim's numerous sexual encounters with other strangers that she had met under highly unusual circumstances. Despite his numerous letters[4] to her setting out these and his other concerns, counsel refused to respond and failed to communicate with him or take his concerns seriously. Movant wrote letters to trial counsel's supervisor asking that he be appointed a different lawyer and sent a complaint to the Office of the Chief Disciplinary Counsel (Ex. A1, pp.318, 322 and Ex. C, p. 69). Movant asked the court to have trial counsel removed from his case, but the trial court denied his request (Ex. A1, p. 324 and Ex. A2, p. 561). Movant's and trial counsel's "irreconcilable differences" led to a breakdown of communication between them. The trial court did not allow trial counsel to withdraw thus depriving Movant of his right to conflict-free and responsive counsel, his right to effective assistance of counsel, his right to a fair trial and due process of law in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

Had trial counsel answered Movant's questions about what of the State's proposed evidence would be used against him at trial and taken his other concerns seriously, Movant would not have felt compelled to request trial counsel to withdraw from his case. But for the actual conflict of interest between trial counsel and Movant, Movant was prejudiced because trial counsel was no longer an advocate, but an adversary to Movant and his case.

(ECF No. 6 at 28-30) (footnote omitted).

The Missouri Court of Appeals found that Wilburn failed to meet his burden to show an actual conflict between himself and trial counsel, an irreconcilable conflict, or a complete breakdown of communication that would have required a change of appointed counsel to ensure the protection of his constitutional rights:

In his third point on appeal, Movant argues the motion court erred in denying his motion for post-conviction relief after an evidentiary hearing, asserting he proved by a preponderance of the evidence that his trial counsel had an actual conflict of interest in that he had requested but been denied the removal of trial counsel before trial due to their breakdown of communications.
We disagree.

"A criminal defendant has no absolute right to a particular attorney." *Johnson v. State,* 510 S.W.3d 881, 884 (Mo. App. E.D. 2017). To warrant substitution of appointed counsel, a defendant must show "justifiable dissatisfaction" with counsel, meaning there must be a conflict of interest, an

irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. *Id.* Whether to allow counsel to withdraw is at the discretion of the trial court. *Id.* A conflict of interest generally arises when one attorney represents multiple defendants with divergent interests. *See State v. Roll,* 942 S.W.2d 370, 377 (Mo. banc 1997). The record includes no facts that could demonstrate an actual conflict of interest between Movant and Olson. Rather, giving Movant's argument on appeal the benefit of the doubt, we presume Movant is in fact claiming that due to her alleged personal dislike of Movant and/or his attitude towards her, she was unprepared for trial and failed to advocate zealously on his behalf.

Movant's allegation that Olson was unprepared for trial was explored and rejected both by the trial court and also by the motion court after the evidentiary hearing. At the evidentiary hearing on his Rule 29.15 motion, Movant testified to the following. Olson did not respond to his requests for information about the outcome of investigation or the admissibility of certain evidence, such as his prior criminal history, Victim's telephone records, Victim's prior sexual encounters, and DNA results excluding him as the source of semen. He contacted Olson's supervisor and chief disciplinary counsel to request a different attorney, but his request was denied. Following his complaints, Olson continued to ignore his communications.

Our review of the record shows that on the second day of trial, Movant moved for a continuance, leave to allow his attorney to withdraw, and for appointment of a new public defender, asserting an irreconcilable conflict between him and Olson leading to a breakdown of communication. The State responded that Olson appeared to be "extremely thorough and competent," pointing out that she had conducted depositions and filed pre-trial motions, some of which pertained to the issues of DNA evidence and Victim's prior sexual relationships. The trial court denied Movant's requests. On the third day of trial, Movant repeated his requests. Olson requested leave to withdraw, stating it was "very difficult for me to approach this trial with a desire to aggressively represent [Movant] when he continues to attack me every morning at the beginning of trial. It's really hard for me to summon what I need to represent my client." The trial court again denied the motion, noting that it appeared Olson was representing Movant appropriately, ethically, and competently, especially in light of the "detailed extensive pretrial motions." The trial court considered the potential delay of the trial, which had been pending for over a year, and that Movant's request came in the middle of the trial. The State made a record that while there appeared to be conflict between Olson and Movant, there was no "indication of this breakdown in front of the jury. [Olson] has remained solid in her representation and her zealous advocacy, and at this point put forward . . . all of the major defenses that are available to the defendant in this case."

In light of the entire record here, Movant has failed to meet his burden to show an actual conflict between himself and Olson, an irreconcilable conflict, or a complete breakdown of communication that would have required a change of appointed counsel to ensure the protection of his Sixth Amendment rights. Neither general dissatisfaction with the amount of time counsel is able to spend with a

defendant nor disagreement about trial strategy is sufficient to establish a "total breakdown in communication." *State v. Cobbins,* 445 S.W.3d 654, 659 (Mo. App. E.D. 2014). Although Movant complains that Olson was unresponsive to his requests to be involved in trial strategy, it is clear from her pre-trial motions that she was pursuing the avenues of defense Movant wanted to pursue. For example, as Movant requested she do, Olson filed a motion in limine to exclude evidence found in Movant's home and evidence of his drug use, sexual activity, and use of chat lines; and she moved to be allowed to submit evidence of Victim's prior sexual conduct and DNA evidence corroborating this sexual conduct.

**Further**, contrary to Movant's allegations that Olson did not take the time to learn the facts of his case, Olson conducted depositions. Contrary to his assertion he and Olson had a total breakdown of communication, Movant agreed that Olson communicated all plea offers to him, which he rejected. Thus, to the extent Movant and Olson did have a breakdown in communication, it does not appear from the record to have affected her representation of Movant. Moreover, contrary to Movant's claim that Olson did not advocate on his behalf, she successfully negotiated with the State to dismiss an additional kidnapping charge against Movant.

Movant has failed to overcome our presumption on appeal that counsel's conduct was reasonable and effective, and he has not shown that Olson failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances, or that his counsel's deficient performance prejudiced him. *See Anderson,* 196 S.W.3d at 33. The motion court's findings that Olson had sufficient communication with Movant; that Olson was prepared for trial despite her frustration with Movant's complaints; and that there was no conflict of interest between Movant and Olson were supported by the evidence. The trial court did not clearly err in denying Movant's amended motion for post-conviction relief. *See* Rule 29.15(k).

(ECF No. 9-16 at 8-11.)

The Missouri Court of Appeals applied the correct legal standard of <u>Strickland</u>, 466 U.S. 668, addressed Wilburn's claim, and concluded that he failed to establish either defective performance by his trial attorney or resulting prejudice under <u>Strickland</u>, as the record showed his attorney communicated with him sufficiently, was prepared for trial, and had no conflict of interest with Wilburn.

The Court determines that the Missouri Court of Appeals' application of the <u>Strickland</u> standard to this claims of ineffective assistance of defense counsel was not unreasonable for the reasons stated by that court.  <u>See</u> <u>Owens</u>, 198 F.3d at 681; <u>Harrington</u>, 562 U.S. at 101.

Ground Sixteen is denied.

L. <u>Ground Seventeen</u>

In Ground Seventeen, Wilburn asserts that his trial attorney was ineffective for failing to advise him of the risks of receiving multiple concurrent life sentences, based on the trial court determining that certain evidence he wished to offer would be inadmissible at trial and other damaging State evidence would be admitted, reducing the likelihood of an acquittal. Wilburn claims he would have accepted the State's offer of twelve years pursuant to an <u>Alford</u> plea if he had been properly advised:

> Movant was denied his rights to due process of law and to effective assistance of counsel in violation of his constitutional rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances, and as a result, Movant was prejudiced.

> Specifically, trial counsel was ineffective for failing to advise Movant of the risks of receiving multiple concurrent sentences of life imprisonment for each of the sex crimes, and fifteen years in prison for distribution of a controlled substance to a minor after a conviction in a jury trial. The State's pre-trial offer was twelve years. DNA of another person was discovered in the alleged victim's clothing. Movant had always maintained to his counsel that his DNA would not be in her clothing or anywhere else. (Ex. C p. 21). Trial counsel never answered Movant about whether the other person's DNA was going to be admitted into evidence at his trial, whether the alleged victim's dishonest statements at her deposition and in the Child Abuse Center interview about her previous sexual activity would be admitted into evidence at trial, and whether the alleged victim's sexual relationship with a one-time acquaintance named Danny LNU ("last name unknown") and Trey LNU (Ex. C, 25-29) would be allowed at trial. The answer to all these questions would have made a difference in Movant's ability to accurately assess the strength of the State's case and whether to accept the pre-trial offer for disposition. Trial counsel never stressed to Movant what he needed to know about the strength of the State's case, the likelihood that his evidence would not be admissible at trial, or the effects of on Movant's defense if he were precluded from presenting this evidence. It would certainly seem obvious to a layman, such as Movant, that evidence of the discovery another man's sperm and semen and her seeking out sexual encounters with older men she had met only on the internet or in haphazard phone calls would be admissible and powerful evidence. Trial counsel was in a position to advise him of the law and to disabuse him of this mistaken belief. Because of trial counsel's failure to inform Movant of the strength of the State's evidence and fact that the alleged victim's previous sexual encounters would

probably not be admissible, he rejected the twelve-year offer and went to trial. Although during his trial he indicated he would accept the twelve-year offer, especially after he realized that his defense would not be presented to the jury, the State refused the offer and changed the offer from one of 12 years to 20 years. Ultimately, trial counsel tried and lost Movant's case.

Had trial counsel advised Movant about the risk of receiving multiple concurrent life sentences, especially after his "defense" had been gutted, Movant would have accepted the offer and would have pled guilty pursuant to the twelve-year plea offer pursuant to an Alford5 plea. But for trial counsel's failure, there is reasonable probability that the outcome of the proceedings, i.e. the sentence, would have been different.

(ECF No. 6 at 30-31.)

The Missouri Court of Appeals found that Wilburn did not allege his counsel misinformed him about the possible maximum sentence he could receive, but instead claimed she failed to tell him prior to trial how the trial court would rule on his motions in limine. The court determined counsel could not be ineffective for failing to advise Wilburn of what she did not know:

In his fourth and final point on appeal, Movant argues the motion court erred in denying his motion for post-conviction relief after an evidentiary hearing because his trial counsel was ineffective for failing to advise him of the risks of receiving multiple life sentences for the charges, and if he had known of this risk, there is a reasonable probability he would have accepted the plea offer of 12 years. We disagree.

At the evidentiary hearing, Movant testified that Olson relayed the plea offer of 12 years, but that he did not want to accept it because he did not want to admit that he was guilty of the charged crimes; rather, he suggested a counter offer, which Olson made on his behalf but the State did not accept. Although Movant testified he would have accepted an *Alford* plea had Olson informed him of the possibility, the motion court found this testimony not credible, and we defer to the credibility determinations of the motion court in a Rule 29.15 proceeding. *See Bliss v. State,* 367 S.W.3d 190, 194 (Mo. App. S.D. 2012). Movant later changed his mind and wanted to accept the 12-year plea offer, but the offer had expired. While the State then offered a plea deal of 20 years, Movant rejected the offer.

The essence of Movant's claim is that Olson was ineffective for failing to provide adequate advice about his case, causing him to reject a plea offer from the State that was more favorable than the sentences he eventually received after trial. Claims of ineffective assistance of counsel apply to whether a criminal defendant received a fair trial, and thus "the Sixth Amendment guarantee of effective assistance of counsel is not implicated unless counsel's challenged conduct had some effect on the reliability of the trial process." *Bryan v. State,* 134 S.W3d

795,802 (Mo. App. S.D. 2004). Movant does not allege here that Olson misinformed him about the possible maximum sentence, which could justify relief under Rule 29.15. *See Ayres v. State,* 93 S.W.3d 827, 834 (Mo. App. E.D. 2002). Rather, Movant asserts merely that Olson failed to provide him with the information he needed to accept the plea offer: namely, how the trial court would rule on Olson's motion in limine to exclude certain evidence and motion to allow the jury to hear testimony of Victim's prior sexual conduct and DNA evidence thereof. The motion court noted that Olson could not have known what the trial court's rulings on this evidence would be until the court had made its ruling, and thus Olson was not ineffective for failing to advise Movant of what she did not know. We agree.

Moreover, inconsistent with his assertion that he was unaware that he could receive a life sentence, Movant testified that he felt pressured by Olson to accept a plea deal rather than take his case to trial, stating he felt she was saying: "I'll tell you the plea, and you're going to take it, or you're going to prison for the rest of your life." Movant cannot both claim that he felt threatened to take a plea deal or to go to jail for the rest of his life, and also that when he rejected the plea deal and was sentenced to life in prison that he was not adequately warned of the possibility.

The trial court did not clearly err in denying Movant's amended motion for postconviction relief.

(ECF No. 9-16 at 11-13.)

The Missouri Court of Appeals applied the correct legal standard of <u>Strickland</u>, 466 U.S. 668, addressed Wilburn's claim, and concluded that he failed to show his counsel was ineffective with respect to advising him about the sentencing risks he faced if convicted.

The Court determines that the Missouri Court of Appeals' application of the <u>Strickland</u> standard to this claims of ineffective assistance of defense counsel was not unreasonable for the reasons stated by that court.  See <u>Owens</u>, 198 F.3d at 681; <u>Harrington</u>, 562 U.S. at 101.

Ground Seventeen is denied.

M. <u>Grounds Eighteen, Nineteen, Twenty, and Twenty-One</u>

In these Grounds, Wilburn assert error by the post-conviction review court and post-conviction appellate court in denying his claims that (1) trial counsel was ineffective for failing to object to the prosecutor's statement during closing argument that Wilburn was a "lion" and the victim was "weak prey"; (2) trial counsel was ineffective for failing to object to the prosecutor's

comments during closing argument to "send a message"; (3) his constitutional rights to conflict-free counsel were violated when the trial court denied his requests to remove and substitute counsel; and (4) trial counsel was ineffective for failing to advise him of the risks of receiving multiple concurrent life sentences if the trial court determined that certain evidence would be inadmissible at trial and other damaging State evidence would be admitted, reducing the likelihood of an acquittal.

These four grounds are restatements of Wilburn's ineffective assistance of trial counsel claims in Grounds Fourteen, Fifteen, Sixteen, and Seventeen, couched as claims of error by the Missouri post-conviction review courts.

These claims are not cognizable in federal habeas proceedings. "[T]he conduct of the state post-conviction relief court cannot constitute independent grounds for federal habeas relief." Jolly, 28 F.3d at 54. "Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." Williams-Bey, 894 F.2d at 317; see also Gee v. Groose, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (same).

Grounds Eighteen, Nineteen, Twenty, and Twenty-One are dismissed as non-cognizable as they fail to state a claim in this action under 28 U.S.C. § 2254.

### Conclusion

For the foregoing reasons, the Court concludes that Petitioner William T. Wilburn's claims set forth in his Amended Petition for Writ of Habeas Corpus either fail on the merits, are procedurally barred, or are not cognizable on federal habeas review.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner William T. Wilburn's First Amended Application and Motion for Writ of Habeas Corpus by a Person in State Custody (ECF No. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Application and Motion for Writ of Habeas Corpus by a Person in State Custody (ECF No. 1) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Petitioner has not made a substantial showing of a denial of a constitutional right, or that the issues presented were adequate to deserve encouragement to proceed further, or that it is debatable whether the Court's procedural rulings are correct, and this Court will not issue a Certificate of Appealability.

A separate Judgment in accordance with this Memorandum and Order will be filed herewith.

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 11th day of March, 2024.